(No. 7206. May 17, 1945.)

W. L. BROWN and MABEL BROWN, husband and wife, Appellants, v. ADDA HAWKINS, Respondent.

[158 Pac. (2d) 840.]

Frank L. Stephan for appellants.

O. C. Hall for respondent.

MILLER, J.—■ October 7, 1943, appellants and re-

spondent entered into a written agreement for the sale and purchase of certain real property, together with all water rights, in Filer townsite, Twin Falls County, Idaho, at the agreed price of $1500.00, $200.00 payable upon the execution of the contract, receipt of which was acknowledged, and the balance on delivery of a good and sufficient warranty deed and an abstract of the property showing a marketable title, free and clear of all liens and encumbrances, except taxes, assessments, insurance and water maintenance charges for the year 1944 and thereafter. March 24, 1944, appellants offered the warranty deed to respondent and demanded payment of the balance of the purchase price, and submitted an abstract, but respondent refused to accept the deed or to pay the unpaid balance of the purchase price for the reason that the abstract disclosed, as was claimed by respondent, that there was a judgment or decree, entered June 19, 1909, by reason of the foreclosure of a mechanic's claim of lien against the property, and that appellants had not tendered a good and marketable title in fee simple as agreed, and that the judgment constituted a lien and cloud upon the title. March 24, 1944, appellants filed their complaint in district court of Twin Falls County, in which they offered to deliver the deed to the clerk of the court, and prayed judgment for $1300.00, the alleged balance of the purchase price, with costs. Attached to the complaint, and made a part thereof, is a copy of the contract marked exhibit "A". Likewise, attached to the complaint, marked exhibit "B", is a copy of notice of claim of lien, filed October 27, 1908, for $303.00, by Amos E. Green and J. C. Calvert, claimants, versus Charles H. Allen and———— Allen, his wife, defendants and owners, for work and labor performed, as carpenters, on a building on real property described in exhibit "A". There is also a claim of lien for materials used in the construction of a dwelling house on the property in the sum of $676.69, filed December 15, 1908, by Weeter Lumber Company, claimant, versus C. H. Allen, owner. Also a claim of lien for $42.00, filed January 23, 1909, for labor performed in painting and varnishing the building on said property, by C. E. Glines, claimant, versus Charles H. Allen, owner. February 25, 1909, Green and Calvert, plaintiffs, filed an amended complaint (no service having theretofor been made) to foreclose their claim and in which it is shown that Charles H. Allen died intestate in Twin Falls County, Idaho, on November 2, 1908, and that

Oscar F. Allen was appointed administrator of the estate of Charles H. Allen, deceased. Oscar F. Allen, Lilly M. Leggett, Hetty I. Arnold and Oscar F. Allen, as administrator of the estate of Charles H. Allen, deceased, C. E. Glines, M. G. Ripley and————Ripley, his wife, and Weeter Lumber Company, Ltd., were made parties defendant in the foreclosure proceedings of Green and Calvert. The trial court properly joined in the same action all persons claiming liens against the Allen property. (Sec. 44-513, I.C.A.; *Miller, et al, v. Carlisle, et al,* (Cal.), 59 P. 785; *Daly v. Lohonton M. Co.,* (Nev.), 158 P. 285.) C. E. Glines and Weeter Lumber Company answered and filed cross-complaints setting up their claims of lien and seeking foreclosure thereof, and that the dwelling house and premises be sold and the proceeds applied to the payment of the amounts found due said cross-complainants. June 19, 1909, findings of fact, conclusions of law and decree were filed. The court found that Charles H. Allen, in his lifetime, entered into contracts with Green and Calvert and that there was due and owing them the aggregate sum of $320.25; that there was due and owing C. E. Glines the aggregate sum of $44.72, and that there was due and owing Weeter Lumber Company the aggregate sum of $709.50 and $100.00 attorney's fees, and that no part of said sums has been paid. The decree ordered the sale of the premises described in the several claims of lien set up in the complaint and cross-complaints, and directed the sheriff to sell said premises and out of the proceeds of such sale to pay Green and Calvert, C. E. Glines and Weeter Lumber Company the amounts found due them, as aforesaid. No sale of the property was made by the sheriff. The decree shows that the defendants Oscar F. Allen, Lilly M. Leggett, Hetty I. Arnold and Oscar F. Allen as administrator of the estate of Charles H. Allen, deceased, and M. G. Ripley and Mabel Ripley, his wife, and all persons having liens subsequent to the liens of Green and Calvert, C. E. Glines and Weeter Lumber Company be forever barred and foreclosed of and from all equity of redemption and claims in and to said premises from and after delivery of the sheriff's deed. January 8, 1910, Green and Calvert assigned and transferred all their right, title and interest in and to the claim sued on and the judgment entered in said cause to the Weeter Lumber company.

December 11, 1908, Oscar F. Allen petitioned for letters

of administration of the estate of Charles H. Allen, deceased, and July 19, 1910, an order settling final account and for distribution was filed in the probate court of Twin Falls County, in which it is shown that Oscar F. Allen, a brother, Lilly M. Leggett and Hetty I. Arnold, sisters, are the distributees of the property described in the foreclosure proceedings. July 26, 1910, recorded in book 16 of Deeds at page 118 of the records of Twin Falls County, Idaho, is a quit claim deed from Oscar F. Allen and Nora E. Allen, his wife, Lilly M. Leggett and O. W. Leggett, her husband, and Hetty I. Arnold and Roy Arnold, her husband, to the Weeter Lumber Company, Ltd., for the property described in the foreclosure proceedings, and also on December 10, 1910, recorded in book 16 of Deeds at page 519 is another quit claim deed from Oscar F. Allen and Nora E. Allen, his wife, Hetty I. Arnold and Roy Arnold, her husband, Lilly M. Leggett and O. W. Leggett, her husband, to Weeter Lumber Company, Ltd., conveying the property described in the foreclosure proceedings and in which it is stated that "* * * this deed is intended to convey the interest of the said first parties in and to said premises as heirs of Charles H. Allen, deceased." All of said instruments heretofore mentioned, other than exhibit "A", are a part of exhibit "B", attached to the complaint of appellants and made a part thereof.

March 29, 1944, respondent filed a demurrer to appellants' complaint. On March 31, 1944, the trial court sustained the demurrer, and ordered that the complaint be dismissed. June 9, 1944, appellants appealed from the order sustaining the demurrer and dismissing the complaint.

In the statement of facts the appellants and respondent use the same language as to the question involved, viz: "The only question involved here is whether the District Court Judgment docketed in 1909, which has not been satisfied and discharged of record, still constitutes a lien or cloud against the property." Appellants contend that the judgment or decree foreclosing the aforementioned mechanic's claim of lien of Green and Calvert ceased to be a lien or cloud against the property at the expiration of five years following the docketing thereof, and that a judgment given in a suit to foreclose a mechanic's or materialman's lien is a money judgment and comes within the provisions of sections 7-1109 and 8-101, I.C.A. Respondent contends that

sections 7-1109 and 8-101, supra, are not applicable thereto; that section 44-510, I.C.A., controls, and "* * * that the mechanic's lien filed on this property, as set out in plaintiff's complaint heretofore referred to, continues to be a lien upon said property" and "* * * it appears it may be a valid and enforceable lien against said property".

The question of when a mechanic's lien foreclosure judgment ceases to be a lien or cloud upon the real property of the judgment debtor, has been an unsettled, disturbing problem for many years in various jurisdictions, depending almost entirely upon statutory provisions and construction.

Section 7-1109, supra, is as follows:

"Judgments in district courts of this state and judgments in district courts of the United States, if rendered within this state, from the time they are docketed, become liens upon all the real property of the judgment debtor, not exempt from execution, within the county in which the judgment is docketed and the court records kept, owned by such debtor at the time or which he may afterwards acquire, until the lien expires. The lien continues for five years unless the judgment be previously satisfied, or unless the enforcement of the judgment be stayed on appeal by the execution of a sufficient undertaking, in which case the lien ceases."

We are of the opinion that said section is not applicable to a judgment or decree in a foreclosure proceeding of a mechanic's or materialman's claim of lien. It is said therein that the "judgments * * * become liens upon all the property of the judgment debtor * * * owned by such debtor at the time or which he may afterwards acquire, until the lien expires. The lien continues for five years * * *." A mechanic's or materialman's lien is a special lien, limited to the real property upon which the building, improvement or structure is constructed, "* * * together with a convenient space about the same, or so much as may be required for the convenient use and occupation thereof, to be determined by the court in rendering judgment * * *." (Section 44-505, I.C.A.) Furthermore, inasmuch as the amount of land required for the convenient use and occupation must be determined by the trial court in rendering judgment (Section 44-503, supra), the lien would be limited to the amount of land thus required for the convenient use

and occupation, and could under no theory be extended to attach to all the real property of the judgment debtor, or to lands afterwards acquired unless so determined by the trial court. (See *Robertson v. Moore*, 10 Ida. 115, 77 P. 218, construing Section 44-505, supra, and *Dybvig v. Willis*, 59 Ida. 160, 82 P. (2d) 195.)

In the case of *Naylor & Norlin, Appellants, v. Lewiston & Southeastern Electric Railway Company, et al, Respondents*, 14 Ida. 722, 95 P. 827, the character of a mechanic's or laborer's lien judgment, under Idaho statute, is disposed of in the following language:

"Taking up appellant's first contention we find that the supreme court of California in passing upon statutes identical with our own in reference to supersedeas and stay bonds, has held that a judgment foreclosing a mechanic's or laborer's lien is not a money judgment within the meaning of sec. 942 of the Code of Civil Procedure of California, which corresponds to sec. 4810, Rev. Stat. of this state. (*Central Lumber & Mfg. Co. v. Center*, 107 Cal. 193, 40 P. 334; *Kreling v. Kreling*, 116 Cal. 458, 48 P. 383; *Olsen v. W. H. Burch & Co.*, 1 Cal. App. 99, 81 P. 656.) We think the construction placed on these statutes by the California court is the correct view of the law."

Section 44-510, I.C.A., is as follows:

"No lien provided for in this chapter binds any building, mining claim, improvement or structure for a longer period than six months after the claim has been filed, unless proceedings be commenced in a proper court within that time to enforce such lien; or if a credit be given, then six months after the expiration of such credit; but no lien shall continue in force under this chapter for a longer period than two years from the time the work is completed, or credit given, unless proceedings to enforce the same shall have been commenced."

On the oral judgment counsel for respondent was asked, "If he thought the judgment obtained as a result of the foreclosure proceedings was still enforceable?" His response to said inquiry was to the effect that he thought it was still enforceable if application were made to the court for a writ of execution. That thought is evidently entertained on the theory that it not being a money judgment

and all the procedural requirements having been complied with under the provisions of section 44-510, supra, and no time limitation appearing, its enforcement still exists. In any event it was upon such theory that it was urged to be a subsisting lien against the property at this time.

In the case of *Western Loan & Building Company*, a Corporation, *Appellant, v. Gem State Lumber Company*, a Corporation, *Respondent*, 32 Ida. 497, 185 P. 554, after quoting the statute, it is held:

, "Section 7349 (44-510, supra) has not been construed by this court with relation to the right of a claimant of a mechanic's lien to foreclose the same against a mortgagee unless his action is commenced against the mortgagee within six months after the claim has been filed. It has been construed, however, by the federal court in the cases of *Utah Implement Vehicle Co.. v. Bowman*, 209 Fed. 942; *Continental etc. Bank v. Pacific Coast Pipe Co.*, 222 Fed. 781, 138 C.C.A. 329; *D. W. Standrod & Co. v. Utah Implement Vehicle Co.*, 223 Fed. 517, 139 C.C.A. 65."

The court cites a number of cases from numerous jurisdictions and further says:

"In this case, the mortgage was duly recorded, so that no question of secret equities is involved. As against the mortgage lien, the lien for materials furnished, if any existed, is lost because the action to foreclose the same was not commenced within the time limited by the statute.

"The limitation prescribed by statute of the time within which an action must be brought in a proper court for the foreclosure of a mechanic's lien is not the ordinary statute of limitation which is waived if not pleaded. 'The time within which a suit must be brought operates as a limitation of the liability itself as created, and not of the remedy alone. It is a condition attached to the right to sue at all.' (*The Harrisburg v. Rickards*, 119 U.S. 199, 7 Sup. Ct. 140, 30 L. ed. 358. See, also, *Continental etc. Bank v. Pacific Coast Pipe Co.*, supra.)"

In *Platts v. Pacific First Federal Savings & Loan Association, et al*, 62 Ida. 340, 111 P. (2d) 1093, it is held:

"The case just quoted from is entitled to great weight, for the reason that there a mechanic's lien had been made,

filed, and recorded in the manner prescribed by statute. The court held that the lien created thereby lapsed by its own limitation where no action was commenced within six months after the date of filing the lien. (*Fleshman v. Whiteside* (Ore.), 34 P. (2d) 648; *Morris v. Orcas Lime Co.* (Wash.), 53 P. (2d) 604; *The Harrisburg v. Rickards*, 119 U.S. 199, 30 L. ed. 358; *Bowles v. Portelance* (Kan.), 67 P. (2d) 419, support the holding in the Western L. & B. Co. case, supra.")

In the case of *Leubben v. Metlen* (Mont.), 100 P. (2d) 935 (which is an action to foreclose a mechanic's lien for material furnished and labor performed), it is said:

"As to plaintiff's contention that the lien being eliminated, the action became one for the recovery of money or damages under subdivision 3 of Section 9787, it is untenable. The action was commenced to foreclose a lien under subsection 6, and must be followed through to conclusion on that theory. The court has held that 'an action for the foreclosure of a lien is not an action on contract for the recovery of money or damages only.' (*Soliri v. Fasso*, 56 Mont. 400, 185 P. 322, 324; see, also, *Henderson v. Hooper Sugar Co.*, 65 Utah 241, 236 P. 239, 45 A.L.R. 637.")

In 40 C.J. 385, Section 524, it is said:

"Where proceedings to enforce the lien are not instituted within the time, if any, prescribed by the statute creating the lien, the right to enforce the lien will be barred or the lien itself discharged, although the right to recover upon the debt secured may remain, the time for enforcement fixed by the statute being held by many authorities to enter into, and be a part of, the right of lien, and the statute in making such provision is regarded as not a pure statute of limitations, although it has been held that it may be waived by a failure to plead it. Where the statute contains no limitations as to time upon the right of claimant to enforce the lien created by it as against the debtor, the right to enforce the lien is not affected by delay."

The above-mentioned cases show that "no action was commenced within six months after the date of filing the lien", and, while they feature some phases of questions involved, are not conclusive of the major question, that is, when does the lien of a judgment on foreclosure of a me-

chanic's claim of lien expire, where all the requirements of statutory provision have been observed? We deem it unnecessary to comment on the provisions of Section 44-515, I.C.A., wherein the right to maintain a personal action to recover judgment for the debt against the person liable therefor is provided, further than to observe that the recovery of such a judgment under the provisions of said section would constitute a money judgment and be within the purview of Section 7-1109, supra.

Section 5-224, I.C.A., is as follows:

"Actions for other relief.—An action for relief not hereinbefore provided for must be commenced within four years after the cause of action shall have accrued."

Said section is identical with Section 343 of the California Code of Civil Procedure, and was adopted therefrom.

Section 8-105, I.C.A., is as follows:

"Execution after five years.—In all cases other than for the recovery of money the judgment may be enforced or carried into execution after the lapse of five years from the date of its entry, by leave of the court, upon motion, or by judgment for that purpose, founded upon supplemental pleadings."

This section is identical with Section 685 of the California Code of Civil Procedure and was adopted therefrom.

In the case of *Doehla v. Phillips* (Cal.), 91 P. 330, in which a "* * * judgment was made December 30, 1891, and entered December 31, 1891, in favor of plaintiff and against appellant and one Carrie E. Phillips, for $518.25, then due under the terms of a promissory note given by the defendants as joint makers. Nothing was done in the matter of enforcing said judgment until March 10, 1905, when ex parte application was made to the Superior Court for an order allowing the enforcement thereof. The affidavit of plaintiff was filed on said application. This affidavit showed that no part of the judgment or interest thereon had ever been paid and that such judgment was wholly unsatisfied. The court thereupon, without notice to appellant, made an order which is substantially one under Section 685, Code Civ. Proc., allowing the original judg-

ment to be enforced and carried into execution for the amount then due as against appellant. An execution was accordingly issued on March 14, 1905. On April 12, 1905, appellant gave notice of his motion to vacate said order and recall said execution on various grounds, * * *." In disposing of the questions involved, it was said:

"It is further claimed that, conceding the applicability of section 685 to money judgments rendered before the passage of the amendment, the relief thereby afforded is barred in this case by the provisions of section 343, Code Civ. Proc., which provides: 'An action for relief not hereinbefore provided for, must be commenced within four years after the cause of action shall have accrued.' We are satisfied that neither this nor any other section of our general statute of limitation is applicable to the procedure contemplated by section 685, Code Civ. Proc. That procedure constitutes neither an 'action' nor a 'special proceeding of a civil nature' within the meaning of those terms as used in such statute, nor is it in the nature of either. It is a mere subsequent step in an action or special proceeding already commenced, which is governed entirely, so far as the time within which the same may be taken is concerned, by the provisions of the statute specially relating thereto. No limitation of time whatever is prescribed by such provisions; the plain effect of section 685, Code Civ. Proc., being to empower the court to authorize the issuance of an execution upon a judgment at any time after its entry; the time within which the court may so act being without limitation. This was the view expressed by this court in *Harrier v. Bassford*, 145 Cal. 529, 532, 78 P. 1038, where the question was not directly involved. Section 336, Code Civ. Proc., in the general statute of limitations, provides the period within which an independent action may be commenced on a judgment, an action in which the plaintiff upon proving his judgment, and its nonsatisfaction is entitled, as a matter of right, to a new judgment. It has no relevancy to the question under consideration here. It may be argued that it is inconsistent that a judgment which is barred by limitation so far as the maintenance of a new action thereon is concerned can, by leave of the court, be enforced by execution, but the Legislature may so provide, and we cannot construe the language of the statute before us otherwise than as showing such provision. Courts are not authorized to make exceptions not reason-

ably sustainable by the language of a statute. As we have seen, the only exception made by the statute is as to judgments barred by limitation 'at the time of the passage of this act.' " (*Bryan v. Stidger*, 17 Cal. 270; *Harrier v. Bassford*, supra; *Ladd v. Mathis* (Cal.), 11 P. (2d) 78; *Ladd v. Mathis* (Cal.), 18 P. (2d) 1015; *Goble v. Appellate Dept. of Superior Court* (Cal.), 20 P. (2d) 345, and *Tolle v. Doak*, (Cal.), 55 P. (2d) 543.)

It is manifest that the trial court in sustaining the demurrer adopted the theory urged by respondent, i.e., that the judgment on foreclosure of the claim of lien constituted a lien against the property and was, therefore, a cloud on title. Appellants and respondent both agree that such was the only question argued on the hearing of the demurrer.

It has been mentioned heretofore that the Weeter Lumber Company, Ltd., by mesne conveyances from the heirs of Charles H. Allen, deceased, acquired the legal title to the real property involved in the foreclosure proceedings of Green and Calvert and involved in this action. This matter was not mentioned by either appellants or respondent in their briefs or oral argument before this court. Gline's lien is of equal rank with that of the lien of Green and Calvert, but superior to that of the Weeter Lumber Company, Ltd. (Section 44-512, I.C.A.). The Weeter Lumber Company, Ltd., having acquired the rights and interests of Green and Calvert by reason of the assignment of their judgment in the foreclosure proceedings, and having acquired the legal title by conveyances from the heirs of Charles H. Allen, deceased, the owner of the property at the time of the contract for the labor and materials, the said foreclosure judgments of Green and Calvert and the Weeter Lumber Company, Ltd., merged into the legal title and were extinguished and terminated as though they never existed, insofar as the rights and interests of Green and Calvert and the Weeter Lumber Company, Ltd., were involved, unless as an equitable circumstance there were junior or inferior liens and a merger would be productive of injustice, or would be injurious, by depriving the Weeter Lumber Company, Ltd., of rights which it could otherwise claim and exercise by keeping the rights separate and distinct. The judgments made and entered in the decree of foreclosure are several. If, however, there is no evidence of intention to keep the rights separate and distinct, and it

appears to be a matter of entire indifference whether there is a merger or not, then equity will follow the rule at law and a merger will be held to have taken place.

Volume 5, page 4492, Words and Phrases, defines "merger" as follows: "A merger, at law is defined to be where a greater estate and a less coincide and meet in one and the same person, in one and the same right, without any intermediate estate. The less estate is immediately annihilated,, or, in the law phrase, is said to be merged— that is, sunk or drowned—in the greater. Thus, if there be a tenant for years, and the reversion in fee simple descends to or is purchased by him, the term of years is merged in the inheritance. The rule in equity is the same as at law, with this modification; that at law it is invariable and inflexibile; in equity it is controlled by the expressed or implied intention of the party in whom the interest or estates unite." (Citing numerous authorities.)

In the case of *Bowling, Sheriff, et al, v. Garrett, et al,* (Kan.), 31 P. 135, it is said:

"It is our opinion that whenever the holder of a mechanic's lien acquires the title to the property upon which the mechanic's lien exists by a conveyance thereof from the owner, and not by a foreclosure in the courts, though that would be equally good, the mechanic's lien will not be so merged in the legal title, or be so extinguished or destroyed, that a judgment subsequently rendered in favor of a third person against such owner, but rendered at a term of the court commenced before the conveyance was made, and in an action pending at the beginning of the term, would create a judgment lien prior or superior to the mechanic's lien, or would authorize the property to be sold on an execution issued on such judgment free and clear from such mechanic's lien. And we would also think that in such a case, where a part of the consideration for the conveyance by the owner to the holder of the mechanic's lien was that the holder of the mechanic's lien should pay and satisfy certain mortgages then existing upon the real estate, a portion of the amount of which mortgages he did pay, the property could not properly be sold on such execution free and clear from such mortgages. And we would also think that injunction would be the proper remedy by the holder of the mechanic's lien against the judgment creditor to protect his interests as against such sale, and

this upon the authority of the case of *Plum v. Bay,* 18 Kan. 415. (See, also, *Richardson v. Hockenhull,* 85 Ill. 124; *Young v. Hill,* 31 N.J. Eq. 429."

In the case of *Sheldon v. La Brea Materials Co.* (Cal.), 15 P. (2d) 1098, it is said:

" 'When a greater and lesser estate coincide and meet in one and the same person, in the same right without any intermediate estate, the latter is in law merged in the greater.' 10 Cal. Jr. 606." (Citing *Estate of Washburn,* 11 Cal. App. 735, 746, 106 P. 415, 420, and, also, *Anglo-Californian Bank v. Field,* 146 Cal. 644, 653, 80 P. 1080, 1083. See, also, *Chase National Bank of New York, et al, v. Hastings, et al* (Wash.), 55 P. 574; *Watson v. Dundee Mortgage & Trust Investment Co., et al* (Ore.), 8 P. 548; *Cooper v. Goble, et al* (Mont.), 252 P. 362; *Manhattan State Bank v. Wamego State Bank* (Kan.), 176 P. 658; *Montgomery County National Bank v. Backus, Sheriff* (Kan.), 196 P. 1074; 40 C.J. 338, Section 452; *Luebben v. Metlen,* supra; *North Texas Building & Loan Association v. Overton, et al* (Tex.), 91 S.W. (2d) 429, and *Finlayson v. Waller, et al* (Ida.), 134 P. (2d) 1069.)

 In view of the fact that only the C. E. Glines judgment appears to cast a cloud upon the title and should be removed in order to make the title marketable, it is therefore ordered that the judgment of the district court be reversed and the cause remanded with direction to allow the plaintiffs to amend their complaint, if they so desire, within thirty days after the filing of the remittitur in the trial court. No costs allowed.

Holden, J., concurs.

Ailshie, C.J., concurs in conclusion reached.

BUDGE, J.—Concurring in part and dissenting in part.

October 7, 1943, appellants agreed with respondent, in writing, to sell and convey to her a good merchantable, fee simple title in and to a certain lot located in Filer Townsite, Twin Falls County. March 2, 1944, appellants offered to convey title to the property by warranty deed. Respondent refused to accept the conveyance or to pay the unpaid balance on the purchase price because the abstract of title

disclosed that a certain judgment which had been entered by the district court in an action for the foreclosure of certain laborers' and materialmen's liens had not been satisfied and released of record, respondent taking the position that said judgment constituted a lien or cloud against the title to the premises. Respondent demurred to appellants' complaint; the court sustained the demurrer and dismissed the action, from which order and judgment this appeal is prosecuted.

This action was filed March 24, 1944; the judgment claimed to be a cloud on appellants' title was docketed in 1909, approximately 35 years prior to the commencement of this action. No proceeding of any nature has been brought for the purpose of keeping the judgment alive; no execution on the judgment has ever issued; no sale of the premises has ever been had.

I am in agreement with the majority opinion wherein it is held that the judgment entered in favor of Green and Calvert merged in the judgment obtained by the Weeter Lumber Company, Ltd., Green and Calvert having assigned their judgment to the Weeter Lumber Company, the Weeter Lumber Company having acquired the legal title from the heirs of Charles H. Allen, deceased, the then owner of the premises at the time the labor and materials were furnished, the Green and Calvert judgment and the Weeter Lumber Company judgment merged in the legal title acquired by the latter company and, for the reasons above stated, were extinguished and terminated as though they never existed.

There remains, therefore, the only question to be determined, namely, whether or not the Glines judgment docketed in 1909 constitutes a lien or cloud against the premises.

An examination of the judgment in favor of Glines simply recites, in substance and effect, that there was so much money due respective lien claimants, including Glines, and ordered and directed that the property be sold. The property was not identified, so far as the purported lien is concerned. The court used the following language:

"that said premises described in complaint as Lot 5 in Block 7 of Duquesne's addition to the Town of Filer, now

known as Lot 5 in Block 22 of the Final and Amended plat of the Town of Filer, * * * or so much thereof as may be sufficient to raise the amounts hereinbefore named, together with costs of suit * * *"

How large Lot 5 was at the time the judgment was entered, or how much of Lot 5 was necessary for the convenient use and occupation of the premises is not disclosed by the record. The court failed to find the amount of land required for the convenient use and occupation of the premises subject to the lien, as required by sec. 44-505, I.C.A. As was said in *Robertson v. Moore,* 10 Ida. 115, 128, 77 P. 218, 222:

"It will be observed that the court did not comply with this provision of the statute and fix the amount of land that should be sold for the necessary requirements for the convenient use and occupation thereof * * *. The intention of the legislature in this provision of the law is obvious. The court has the power to call witnesses to ascertain the amount of land necessary for the convenient use and occupation of the property to be sold under the terms and conditions of the lien and judgment * * *. It was error on the part of the trial court not to comply with this provision of the statute, and the case is remanded, with direction to the trial court to ascertain the amount of land required for the convenient use and occupation of the property ordered sold under the lien * * * and after such fact is ascertained make a proper finding and modify the judgment accordingly." (*Dybvig v. Willis,* 59 Ida. 160, 82 P. (2d) 95; *Idaho L. & H. Co. v. DiGiacomo,* 61 Ida. 383, 102 P. (2d) 637.)

The court having failed to find the facts as required under the provisions of sec. 44-505, supra, no lien was created against the premises by reason of the judgment in favor of Glines; no valid sale of the premises could have been had in the absence of such finding.

The judgment in favor of Glines was a money judgment only for the amount due him for labor, (Secs. 7-1109, 8-101 and 8-105, I.C.A.; secs. 681 and 685, C.C.P. (Cal.) which when docketed was a lien generally against all the debtor's premises situated within Twin Falls county. The supreme court of California, construing statutes similar to secs.

8-101 and 8-105, supra, held that judgments foreclosing liens were "to enforce the payment of money," and came within the provisions and terms of sec. 681, C.C.P. (*Jacks v. Johnston* (Cal.), 24 P. 1057; *Cortez v. Superior Court* (Cal.), 24 P. 1011.) In *Dorland v. Hanson* (Cal.), 22 P. 552, it is said:

"Counsel attempt to distinguish between an execution and an order of sale, and contend that section 681 (our sec. 8-101) is confined in terms to the former, and does not limit the time in which the latter may issue. We think, however, that the difference between the two writs is more in the name than anything else, so far as it affects the questions before us, and that section 681 (our sec. 8-101) must be held to apply to both."

The judgment ceased to be a lien or cloud against the premises at the end of five years following the docketing thereof, and at the end of five years the lien lapsed, under the provisions of sec. 7-1109, I.C.A., which provides:

"Judgments in the district courts of this state and judgments in district courts of the United States, if rendered within this state, from the time they are docketed, become liens upon all the real property of the judgment debtor, not exempt from execution, within the county in which the judgment is docketed and the court records kept, owned by such debtor at the time or which he may afterwards acquire, *until the lien expires. The lien continues for five years* unless the judgment be stayed on appeal by the execution of a sufficient undertaking, in which case the lien ceases."

Section 8-101, I.C.A., provides:

"The party in whose favor judgment is given, may, at any time within five years after the entry thereof, have a writ of execution issued for its enforcement."

Section 8-105, I.C.A., has no application to the facts of this particular case. No lien was perfected or became enforceable; no judgment, other than a money judgment, was ever entered; no sale of the premises under the purported lien was ever had; no return of sale was ever made by the sheriff; no action was brought to renew the Glines judgment, as provided for in sec. 5-215, I.C.A.

The expiration of the lien at the end of five years did not extinguish the judgment, but terminated the statutory security. (*Bashro v. Beloit,* 20 Ida. 592, 602, 119 P. 55.) We are not concerned with the judgment nor with the jurisdiction of the court to enter the judgment, we are concerned only with the question of when, subsequent to the entry of the judgment, the lien lapsed. The judgment was barred by the statute of limitations at the end of six years. (Sec. 5-215, I.C.A.) The lien lapsed at the end of five years. (Sec. 7-1109, I.C.A.) The provisions of sec. 8-101, I.C.A., fixes the time within which execution may issue. "At any time within five years after the entry thereof." (*Custer v. McCutcheon,* 283 U.S. 514, 75 L. ed. 1239, 51 S. Ct. 530.) As was held in *Platts v. Pacific Fed. Sav. Assn.,* 62 Ida. 340, 349, 111 P. (2d) 1093, 1096:

"We conclude and so hold, that a judgment lien lapses under the statute creating it, at the expiration of *five years from the date it is docketed.*"

In my opinion there is no logic in the contention that where a judgment is barred by the statute of limitations, the judgment lien is not. Where the judgment is unenforceable, dead, the lien is also unenforceable and dead. Counsel's contention that the lien exists forever; that it has no limitation and may, by supplementary proceedings, be renewed and enforced upon application to the trial court, even though it be 100 years old, is, to my mind, untenable. If the judgment to which the lien owes its existence is barred by the statute of limitations—has ceased to exist—it is clear that the lien which is a mere incident to the judgment has also ceased to exist. (*Ackiss v. Satchell,* 104 Va. 700, 52 S.E. 378.) A laborer's or mechanic's lien has no greater sanctity than any other lien. The time fixed by the statute cannot be prolonged by the courts, and the lien cannot be enforced in equity after it has ceased to be enforceable at law by the expiration of the statutory period.

In *Lamson v. Gold,* 72 W. Va. 618, 621, 79 S.E. 728, 729, 51 LRANS 883, it is held:

"The creditor's right to the lien of his judgment is gone forever when his right to sue out execution on the judgment or to revive it by scire facias is barred."

There is another cogent reason that has been suggested which, to my mind, is sound and sufficient, in and of itself, to reverse the judgment.

Conceding that sec. 7-1109, I.C.A., does not apply to a judgment foreclosing mechanic's lien because it is not a general judgment, we must look elsewhere for a statute fixing the duration of the lien of such judgments.

Section 44-511, 44-512 and 44-513, I.C.A., are evidently the sections authorizing a judgment of *foreclosure* of a mechanic's lien, but they designate no duration for the lien. Either the lien is only immediate or everlasting, or somewhere in between. To be effective, and otherwise it would be meaningless, the legislature must have intended that it extend for a fixed time.

Ordinarily the statutes prescribe the extent, in time, of a lien of a judgment. (34 C.J. 620.) We have no specific statute; therefore, it would seem reasonable to determine the matter by reference to such statutes as we have. What reason or basis is there for holding that a lien of judgment in a special proceeding would extend beyond that of a general judgment, declared fixed at five years in sec. 7-1109, I.C.A., by *Platts v. Pac. Sav. Assn.*, supra.

Sction 44-516 makes applicable appropriate sections of the Civil Code of Procedure, of which sec. 8-101, I.C.A., must be considered as the one providing for carrying into effect the foreclosure judgment by sale of the covered property.

After five years no execution could issue, without a revival under secs. 5-215, 8-105 or 8-312, I.C.A. Such revival would however revive the lien only as of the date of such subsequent reviving judgment. (*Evans v. City of American Falls*, 52 Ida. 7 at 25, 11 P. (2d) 363.)

The transfers from the parties whose title is otherwise good made five years after the date of Glines' judgment are therefore unaffected by his judgment since there has been no revival. Even if revival was or could be subsequently secured, it could only attach at the date thereof, and property alienated in the interim would not have been covered by, and would therefore be free of, the previous lien.

All immediate incumbrances would therefore be unaffected by any renewal, there being none herein.

The amount involved in this appeal is negligible, but the rule announced is of great importance and far-reaching, as is readily apparent.

The judgment of the trial court should be reversed, the cause should be reinstated, and the demurrer overruled, and further proceedings should be taken as indicated herein. Costs should be awarded to appellants.

Givens, J., concurs in the conclusion reached in the foregoing opinion.